## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## Case No.: 3:18-CR-311-MOC

UNITED STATES OF AMERICA,

     **Plaintiff,**

v.

MANUEL MAURO CHAVEZ,

     **Defendant.**

_____/

## DEFENDANT'S SENTENCING MEMORANDUM AND
## REQUEST FOR A REASONABLE SENTENCE

Defendant, **MANUEL MAURO CHAVEZ ("Chavez")**, by and through undersigned

counsel, hereby files this Sentencing Memorandum and moves this Court pursuant to 18 U.S.C. §

3553(a) to impose a reasonable sentence, all facts and circumstances considered.

### I.      INTRODUCTION

In light of the mitigating factors set forth herein, Chavez respectfully requests this Court

impose a sentence of forty-eight (48) months' imprisonment on all the money laundering and wire

fraud counts to be served concurrently with each other, followed by a mandatory consecutive

prison term of zero (0) months (pursuant to 18 U.S.C. § 2326), which would result in a total

sentence of forty-eight (48) months in prison. Such a sentence would be sufficient—but not greater

than necessary—to satisfy the factors outlined in 18 U.S.C. § 3553(a). <u>See</u> <u>Kimbrough v. United</u>

<u>States</u>, 552 U.S. 85, 101 (2007). Chavez's personal history, his relatively minor role in the offense,

the unjust/artificial inflation of the advisory guideline range by the loss amount involved, and the

need to avoid unwarranted sentencing disparities all weigh in favor of a significantly below-guidelines sentence.

## II.    PROCEDURAL HISTORY

1.    On September 19, 2018, Chavez was charged in a twenty-count Indictment with one (1) count of conspiracy to commit mail fraud and wire fraud, in violation of 18 U.S.C. § 1349 (Count 1); nine (9) counts of wire fraud, in violation of 18 U.S.C. § 1343 (Counts 2–10); one (1) count of conspiracy to launder money, in violation of 18 U.S.C. § 1956(h) (Count 11); and nine (9) counts of money laundering, in violation of 18 U.S.C. § 1956(a)(2)(A) (Counts 12–20). (D.E. 3).

2.    On July 9, 2021, the Court, upon the Government's motion, dismissed Counts 2, 4, 5, 12, 14, and 15 of the Indictment. (D.E. 296).

3.    Following a six-day jury trial, on July 14, 2021, Chavez was convicted of conspiracy to commit mail fraud and wire fraud (Count 1), wire fraud (Counts 3, 6–10), conspiracy to launder money (Count 11), and money laundering (Counts 13, 16–20). (D.E. 301).

4.    Sentencing is presently set for January 11, 2023.

## III.    ADVISORY GUIDELINES CALCULATIONS

### A.    UNCONTESTED GUIDELINE PROVISIONS

#### 1.    Wire Fraud Counts

U.S.S.G. § 2B1.1 is the applicable guideline for violations of 18 U.S.C. §§ 1343 and 1349. The base offense level is seven (7). See U.S.S.G. § 2B1.1(a)(1). A two (2) level increase is appropriate because the offense involved ten or more victims. U.S.S.G. § 2B1.1(b)(2)(A). Two (2) more levels are added because a substantial part of the scheme occurred outside the United States. See U.S.S.G. § 2B1.1(b)(10)(B).

Thus, Chavez and the Government agree that, at a minimum, the adjusted offense level should be eleven (11) for Counts One, Three, and Six through Ten.

### 2. Money Laundering Counts

U.S.S.G. § 2S1.1 is the applicable guideline for violations of 18 U.S.C. § 1956. Pursuant to U.S.S.G. § 2S1.1(a)(1), the base offense level is determined by the guideline for the underlying offense, which is U.S.S.G. § 2B1.1. The base offense level is six (6), as correctly determined by the U.S. Probation Office. U.S.S.G. § 2B1.1(a)(2). The offense involved ten or more victims, so two (2) points are added to the base offense level. U.S.S.G. § 2B1.1(b)(2)(A). Another two (2) level increase is appropriate because a substantial part of the scheme occurred outside the United States. See U.S.S.G. § 2B1.1(b)(10)(B). Because Chavez was convicted under 18 U.S.C. § 1956, two (2) more levels are added to the base offense level. U.S.S.G. § 2S1.1(b)(2).

Therefore, Chavez agrees that his adjusted offense level is twelve (12) for Counts Eleven, Thirteen, and Sixteen through Twenty.

### 3. Grouping of Counts

All counts are grouped under both U.S.S.G. §§ 3D1.2(c) & (d) because: (1) one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts, and (2) the offense level is determined based on the total amount of aggregate loss.

The Court must apply the guideline that produces the highest offense level. See U.S.S.G. § 3D1.3(b).

**B.     CONTESTED GUIDELINE PROVISIONS**

**1.   Loss Amount Calculation**

The Government and U.S. Probation Office seek to hold Chavez accountable for an intended loss of $3,819,794.00. This amount results in an eighteen (18)-point increase to Chavez's base offense level. U.S.S.G. § 2B1.1(b)(1)(J). However, Chavez submits that the appropriate loss amount is $1,048,944.99, which represents the sum all bridges received from victims during Chavez' eight (8) month involvement in the offense (i.e., November 2014 to July 2015). <u>See</u> Testimony of IRS Special Agent Erik Kost, Trial Tr. Vol. IV at 638:23–24; <u>see also</u> Defendant's Summary of All Bridge Cell Deposits from November 2014 to July 2015, attached hereto as Exhibit 1.

Imputing the entire $3,819,794.00 loss amount to Chavez is not only unreasonable, but also factually and legally improper. While courts routinely attribute the entire loss caused by a conspiracy to each individual participant under U.S.S.G. § 1B1.3, to be included in an advisory guidelines calculation, the intended loss must have been an object of a particular defendant's purpose. <u>See</u> <u>United States v. Manatau</u>, 647 F.3d 1048 (10th Cir. 2011). Indeed, "intended loss" is defined as "(I) the pecuniary harm that the defendant **purposely** sought to inflict; and (II) includes intended pecuniary harm that would have been impossible or unlikely to occur (e.g., as in a government sting operation, or an insurance fraud in which the claim exceeded the insured value)." <u>See</u> U.S.S.G. § 2B1.1 cmt. n.3(A)(ii). Thus, "something is intended if it is done on purpose – not merely known, **foreseen**, or just possible or potentially contemplated." <u>Manatau</u>, 647 F.3d at 1050 (holding "intended loss" does not mean a loss that the defendant merely knew would result from his scheme or a loss he might have possibly and potentially contemplated) (emphasis added).

4

Special Agent Kost testified that the Costa Rican call center's operations began in January of 2014. See Testimony of IRS Special Agent Erik Kost, Trial Tr. Vol. IV at 696:12–13. Chavez did not enter the conspiracy until November 2014, when he received the first deposit of victim funds. Id. at 695:22. Chavez subsequently withdrew from the scheme on July 8, 2015, the date of the last recorded transaction in which he was involved. Id. at 696:23–25. Given Kost's testimony, any victim losses prior to November 2014, and those that occurred after July 8, 2015, could not have been an object of Chavez's purpose for participating in the scheme – because he was not involved in the conspiracy during those two periods. Chavez could not have possibly foreseen— let alone intended to cause—such losses.

Thus, Chavez respectfully requests that the Court find the loss amount attributable to his conduct is $1,048,944.99, which corresponds to a fourteen (14)-level increase to Chavez's base offense level under U.S.S.G. § 2B1.1(b)(1)(H). This figure accurately captures the extent of Chavez's involvement in the offense and differentiates his level of culpability relative to those of his co-defendants.

**2. Obstruction of Justice Enhancement**

Chavez's conversations with Paul Stiep ("Stiep") during the first day of trial violated the Court's sequestration order. However, Chavez offers the Court some context into his decision to communicate with Stiep. The two men have been best friends since their early teens. Chavez does not merely view Stiep as his best friend, but rather as a family member.

Chavez expresses his sincerest remorse for failing to abide by the Court's sequestration order. He did not communicate with Stiep with any malicious intention of compromising the Government's ability to use Stiep as a witness at trial. Moreover, Chavez did not have a full

appreciation for the potential consequences that could result from failing to follow this Court's sequestration order.

Chavez asks that the Court consider its penalty of admitting the telephone call logs through a government witness for the limited purpose of showing Chavez's identity to be a sufficient punishment for his conduct, and to not apply the two (2)-level enhancement to his base offense level for obstruction of justice under U.S.S.G. § 3C1.1.

### 3. Misrepresentation of Employment with a Government Agency

While the Government and Probation Office urge a two (2) point enhancement under U.S.S.G. § 2B1.1(b)(9)(A) is warranted, Chavez never **personally** misrepresented that he was acting on behalf of a government agency while participating in the offense.

Indeed, the application note for U.S.S.G. § 2B1.1(b)(9)(A) makes clear that:

> Subsection (b)(9)(A) applies in any case in which **the defendant represented** that the defendant was acting to obtain a benefit on behalf of a charitable educational, religious, or political organization, or a government agency (regardless of whether the defendant actually was associated with the organization or government agency)….

See § 2B1.1 cmt. n.8(B) (emphasis added).

The trial testimony of Cole Parks, a key Government witness, established that only the "openers," "closers," and "reloaders" were responsible for contacting victims. See Testimony of Cole Parks, Trial Tr. Vol. I at 74:11–13, 78:24–25, 79:1–2, 91:11–15. Additionally, Parks' testimony established that it was the "closers," acting at the direction of Eugenio Castro, who instructed victims where to send money to claim the fictitious sweepstakes prize. Id. at 79:16–24.

The application note for U.S.S.G. § 2B1.1(b)(9)(A) specifies the enhancement is applicable only if **the defendant** misrepresented his status as a government actor. It follows then, *a priori*,

that the enhancement is inapplicable in cases where a co-defendant made a misrepresentation to victims about the defendant acting on behalf of a government agency.

Although the Government and Probation Office suggest that the testimony of Susan Siebert ("Siebert") proves Chavez directly contacted victims, there are several reasons the Court should reject this claim.

At trial, Siebert acknowledged having "memory problems" due to the medication she takes. See Testimony of Susan Siebert, Trial Tr. Vol. II at 268:5–6. Additionally, Siebert also stated that the person who first informed her she had "won" the sweepstakes spoke with a "broken English accent." Id. at 283:8, 16–25. Chavez was born in the United States, English is his first language, and he does not speak with a "broken English accent," as Siebert testified.

The notion that Chavez was himself contacting victims is also inconsistent with the testimony of both Cole Parks and Betty Rae McGehee ("McGehee"). Again, Parks explained that "closers" provided victims with the details about where the money should be sent. See Testimony of Cole Parks, Trial Tr. Vol. I at 74:11–13, 78:24–25, 79:1–2, 91:11–15. Parks also confirmed that "openers"/"closers"/"reloaders" used aliases to "deter detection from law enforcement;" further undermining Siebert's testimony that Chavez contacted her using his real name while representing that he worked for a government entity. Id. at 75:4, 8–9. Again, Chavez's role was limited to acting as a "bridge," and he did not personally contact victims using an alias. McGehee's testimony also compromises the veracity of Siebert's statements and corroborates Parks' explanation of the call center's operations. McGehee admitted that she never spoke with Chavez, but rather "Gabriel Evans," who informed her of where/to whom McGehee needed to mail the money orders. See Testimony of Betty McGehee, Trial Tr. Vol. I at 42:9–10; 64:2–5. It was "Gabriel Evans" (Eugenio

Castro) who told McGehee the money she was sending to the "bridges" was for "the IRS." <u>Id.</u> at 44: 20–23.

Considering the glaring inconsistencies between Siebert's testimony and that of Parks and McGehee, Chavez respectfully requests that the Court decline to apply the two (2)-point enhancement under U.S.S.G. § 2B1.1(b)(9)(A).

### 4. Vulnerable Victim Enhancement

Under U.S.S.G. § 3A1.1(b), the base offense level increases by two (2) points if the defendant "knew or should have known that a victim of the offense was a vulnerable victim."

A "vulnerable victim" is one who "(A) is a victim of the offense of conviction and any conduct for which the defendant is accountable under § 1B1.3 (Relevant Conduct); and (B) who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct." <u>See</u> U.S.S.G. § 3A1.1 cmt. n.2. Notably, the guidelines commentary explains by way of example, that this adjustment "would not apply in a case in which the defendant sold fraudulent securities by mail to the general public and one of the victims happened to be senile. Similarly, for example, a bank teller is not an unusually vulnerable victim solely by virtue of the teller's position in a bank." <u>Id.</u> This is such a case.

There is no indication that Chavez had any reason to know that the victims were "vulnerable." At trial, Parks testified that leads for victims were purchased by Eugenio Castro through third party brokers. Trial Tr. Vol. I at 102:11–12. Moreover, Parks stated that the information on these lists of leads was limited to some basic contact information of individuals that had entered a sweepstakes before. (145:13–18). Parks admitted the call center targeted people who had "shown an interest in playing sweepstakes." (146:3–6). Labeling someone as a "vulnerable victim" merely because of such an interest is surely not what the guidelines intended,

nor is it sufficient to put someone on notice that a victim is unusually vulnerable. See United States v. Shephard, 892 F.3d 666, 670 (4th Cir. 2018) (explaining the enhancement "requires a fact-based explanation of why advanced age or some other characteristic made one or more victims unusually vulnerable to the offense conduct, and why the defendant knew or should have known of this unusual vulnerability.").

In Shephard the Fourth Circuit held that a Costa Rican call center's "reloading" process was sufficient to support a vulnerable victim sentence enhancement for a defendant who worked as an "opener," "runner," and "reloader." Id. at 670–72. Unlike the defendant in Shephard, who had multiple roles in the scheme, Chavez only worked as a "bridge." Whereas "openers" and "reloaders" do communicate with victims (which would likely place them on notice of someone's unusual vulnerability), "bridges" act only as middlemen whose purpose is to facilitate the exchange of victim funds, not to solicit same. Moreover, the jury did not find that Chavez intentionally targeted individuals over the age of fifty-five (55). See Jury Verdict Form at 3 (D.E. 301). Thus, Chavez respectfully asserts that this adjustment is not warranted here.

## 5. Absence of Downward Adjustment for Mitigating Role

Under U.S.S.G. § 3B1.2, a defendant may be eligible for a two-to-four-point reduction in their base offense level for being a minimal/minor participant in the offense. The application notes to § 3B1.2 state that "a defendant who is accountable under § 1B1.3 for a loss amount under § 2B1.1…that greatly exceeds the defendant's personal gain from a fraud offense or who had limited knowledge of the scope of the scheme may receive an adjustment under this guideline." See U.S.S.G. § 3B1.2 cmt. n.3(A).

As previously mentioned, Chavez was a limited participant in the scheme. The evidence at trial showed that Chavez only "earned" $26,634.00 – considerably less than other participants.

Despite the Government's best efforts to inflate Chavez's role in the offense, there is no denying that the individuals who bear the lion's share of responsibility are Roger Roger and Eugenio Castro, the true architects of the scheme. Even taking the evidence in the light most favorable to the Government, Chavez was, at most, a very small cog in a much larger, more complex structure; which is further proof of his minor role in the offense, warranting at least a three (3)-level decrease to Chavez's base offense level.

## C.     TOTAL OFFENSE LEVEL

Assuming the Court sustains his objections to the above-referenced enhancements and applies a three (3)-level mitigating role reduction, Chavez's total offense level would be twenty-three (23), which is the higher of the offense levels produced by grouping the wire fraud and money laundering counts. See U.S.S.G. § 3D1.3(b). A criminal history category of I and total offense level of twenty-three (23) corresponds to an advisory guidelines range of forty-six (46) to fifty-seven (57) months' imprisonment. However, as further detailed below, there are several mitigating factors Chavez asks the Court to consider in determining his sentence.

## IV.     REQUEST FOR A REASONABLE SENTENCE

As this Court well knows, "[t]he Guidelines are not only *not mandatory* on sentencing courts; they are also not to be *presumed* reasonable." Nelson v. United States, 555 U.S. 350, 352 (2009) (emphasis on original); see also Gall v. United States, 552 U.S. 38, 39 (2007) (a district judge **"may not presume that the Guidelines range is reasonable but must make an individualized assessment based on the facts presented."**). "The corollary of that proposition is that district judges have an obligation to consider whether a sentence other than a Guidelines sentence would be sufficient, but not greater than necessary, to serve the purposes of sentencing"

under 18 U.S.C. § 3553(a). See United States v. Corsey, 723 F.3d 366, 382 (2d. Cir. 2013) (Underhill, J., concurring).

Unless otherwise prohibited by law, this Court "may consider, without limitation, any information concerning the background, character and conduct of [a] defendant." U.S.S.G. § 1B1.4; see also 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.").

18 U.S.C. § 3553(a) obliges the Court, "in determining the particular sentence to be imposed[,]" to consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed to—
>
> > (A) reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense;
> >
> > (B) provide adequate deterrence to criminal conduct;
> >
> > (C) protect the public from future crimes of the defendant; and
> >
> > (D) provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for—
>
> > (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—
>
> > > *        *        *        *

11

(5) any pertinent policy statement—

*          *          *          *

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a)(1)–(7).

Chavez respectfully asks this Court to look beyond the advisory sentencing guideline range and focus on the principles pronounced by the United States Supreme Court and the factors set forth in 18 U.S.C. § 3553(a), and thereafter impose a reasonable sentence.

## A.    MITIGATING FACTORS

### 1.    THE HISTORY AND CHARACTERISTICS OF MANUEL CHAVEZ

Congress has directed that a defendant's personal characteristics should be considered equally with "the nature and circumstances of the offense." 18 U.S.C. § 3553(a)(1). Yet these factors are given no weight in the advisory guideline calculation; indeed, the guidelines recognize only the defendant's criminal record (providing for higher offense levels for a greater criminal history, rather than reductions for no prior record). See Rita v. United States, 551 U.S. 338, 364-65 (2007) ("The Commission has not developed any standards or recommendations that affect sentencing ranges for many individual characteristics. Matters such as age, education, mental or emotional condition, medical condition (including drug or alcohol addiction), employment history, lack of guidance as a youth, family ties, or military, civil, charitable, or public service are. . . matters that § 3553(a) authorizes the sentencing judge to consider."); see also United States v. Prosperi, 686 F.3d 32, 39 & 45 (1st Cir. 2012) (affirming a downward variance from an advisory guideline range of 87–108 months to home detention because the guidelines did not take into

account the personal characteristics of the defendant); <u>United States v. Martin</u>, 520 F.3d 87, 93 (1st Cir. 2008) (affirming a 91-month variance down from the guideline range based in part on the defendant's "personal qualities indicating his potential for rehabilitation"). Therefore, we urge the Court to balance the federal sentencing guideline calculations by considering the history and characteristics of Chavez that weigh in favor of a significantly below-guidelines sentence.

Manuel Mauro Chavez was born in Miami, Florida, on November 13, 1990. He is the son of Lourdes and Manuel Chavez and one of six (6) siblings. Chavez's father works as a gaffer in the film/television industry, and his mother is an insurance saleswoman. Chavez's parents have been separated since his birth, and his early childhood was tumultuous. His father was largely absent from his life, and Chavez's parents often fought over his father's unwillingness to financially support the children. Due to their financial struggles, Chavez's mother worked long hours and was unable to spend a lot of time raising or caring for Chavez and his sisters.

The lack of parental guidance and absence of his father looms large in Chavez's story. As a child, Chavez was diagnosed with Attention-Deficit/Hyperactivity Disorder ("ADHD"), and he grew up unsure of his purpose in life. Chavez struggled to find what he enjoyed doing, which is reflected by his educational and employment record: dropping out of high school (after being "kicked out" of his mother's home) and working minimum wage jobs at places such as Costco, McDonalds (as a teen), and Chipotle. The little money Chavez earned from these jobs was used to support himself.

Eventually, Chavez enrolled himself at Miami-Dade College for one year, though he failed most classes and never completed his studies. Chavez' story is one of a misguided youth who tried to find his own way in life, but unfortunately "fell in" with the wrong crowd.

Shortly before the events at issue began, Chavez was earning an inconsistent income through the occasional odd-job and working part-time as an Uber driver. Chavez would later be introduced to Eugenio Castro through his best friend, Paul Stiep. Desperate to achieve some semblance of financial stability, Chavez trusted Stiep and, regrettably, decided to work with him and Castro in what Chavez initially believed was Castro's legitimate sweepstakes/lottery business. Had Chavez known the adverse impact this decision would have on his family, friends, his life and his liberty, he surely would not have made the same choices.

We urge this Court not to define Manuel Chavez solely by the conduct at issue here. In many ways, he is the product of a difficult upbringing, one which contributed in no small part to his decision to participate in the offense alleged. See Wiggins v. Smith, 539 U.S. 510, 535 (2003) ("[E]vidence about the defendant's background and character is relevant because of the belief, long held by this society, that defendants who commit criminal acts that are attributable to a disadvantaged background…may be less culpable than defendants who have no such excuse.").

Manuel Chavez is a well-mannered, kind, and caring person who at one point dreamed of helping others through a career in medicine. Chavez offers twenty-five (25) letters written by family members and friends, attached hereto as Exhibit 2, to provide the Court with a more nuanced and holistic view of who he really is.

In its remarks on the effect of incarceration on nonviolent offenders, the court in United States v. Prosperi, 686 F.3d 32 (1st Cir. 2012), recognized the punishment inherent to those who are thrust into the criminal justice system:

> I think it is very difficult at times, for those of us who are judges or prosecutors or lawyers, to put ourselves in the shoes of a person with no prior experience with the criminal justice system who finds himself or herself accused of a crime. I do not think, sometimes, we fully recognize the anguish and the penalty and the burden that

14

persons face when called to account, as these men are, for the wrong
that they committed.

Id. at 48.

Chavez asks the Court to take his personal characteristics and life history into account when imposing his sentence.

## 2. THE GUIDELINES AND LOSS AMOUNT OVERSTATE CHAVEZ' ROLE IN THE OFFENSE

In Pepper v. United States, 131 S.Ct. 1229, 1240 (2011), the Supreme Court emphasized the need for individualized sentencing, reiterating "the principle that 'the punishment should fit the offender and not merely the crime.'" (quoting Williams v. New York, 337 U.S. 241, 247 (1949); see also Miller v. Alabama, 567 U.S. 460, 470 (2012) ("punishment for crime should be graduated and proportioned to both the offender and the offense"). While the instant offense was undoubtedly a serious one, it was not the fraud of the century. Yet, according to the U.S. Probation Office, Chavez should face an advisory guideline range of 188 to 235 months' imprisonment. This draconian guideline range is largely driven by a single variable – the loss amount involved.

The inescapable truth is that U.S.S.G. § 2B1.1's loss table has an oversized role in determining the length of an economic crime offender's sentence, and its improper application can result in staggering sentences otherwise reserved for violent crimes—regularly sentences of life imprisonment—even for defendants with no prior criminal history.

The reach of U.S.S.G. § 2B1.1 extends to over three hundred federal criminal statutes. See "The Trial Penalty: The Sixth Amendment Right to Trial on the Verge of Extinction and How to Save It," National Association of Criminal Defense Lawyers (2018) at 33.[1] It is troubling that the single most pervasive guideline in the federal criminal justice system "was not developed by the

---

[1] Available at: www.nacdl.org/trialpenaltyreport

Sentencing Commission using an empirical approach based on data about past sentencing practices." See United States v. Corsey, 723 F.3d 366, 379 (2d. Cir. 2013) (Underhill, J., concurring). As is the case here, § 2B1.1's loss table does not consider the extent an offender personally profited from the offense – meaning those who saw a nominal amount of profit will be sentenced just as harshly under the loss table as the mastermind who earned the greatest profit. **Such a result fails to properly account for relative culpability among offenders and results in disproportionately high sentences for more marginal co-conspirators.**

Moreover, the steep increases to Chavez's base offense level under the loss table, coupled with the independent enhancements the Government and Probation Office urge, result in unfair double counting and an extreme sentencing recommendation.

The United States Sentencing Commission has acknowledged that "as more and more adjustments are added to the sentencing rules, it is increasingly more difficult to ensure that the interactions among them, and their cumulative effect, properly track offense seriousness." See "Fifteen Years of Guidelines Sentencing: An Assessment of How Well the Federal Criminal Justice System is Achieving the Goals of Sentencing Reform," United States Sentencing Commission (November 2004) at 137–38[2]; see also United States v. Lamonda, 2008 U.S. Dist. LEXIS 178, 66 (M.D. Fla. 2008) (citation omitted) aff'd 384 Fed. Appx. 944 (11th Cir. 2010) ("The Guidelines themselves acknowledge that the offense level resulting from the loss determination may 'substantially overstate the seriousness of the offense' warranting a downward departure.").

---

[2] Available at: https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-projects-and-surveys/miscellaneous/15-year-study/15_year_study_full.pdf

Sentence enhancements based on loss also do not comport with the Congressional directives of 18 U.S.C. §3553(a) because emphasis on loss discounts the importance of other relevant factors a sentencing judge is obligated to consider. See Douglas A. Berman, Fiddling with the Fraud Guidelines as Booker Burns, 27 FED. SENT'G REP. 267, 268 (2015). "Ultimately, '[t]he touchstone of "reasonableness" is whether the record as a whole reflects rational and meaningful consideration of the factors enumerated in 18 U.S.C. § 3553(a)." United States v. Tomko, 562 F.3d 558, 568 (3d. Cir. 2009) (citation omitted).

As stated above, the Government's position and Probation Office's calculations of the advisory guidelines grossly overstate the seriousness of this crime, and Chavez submits a significant downward variance is warranted.

### 3. DETERRENCE DOES NOT REQUIRE A LENGTHY TERM OF INCARCERATION

A lengthy term of incarceration "may work to promote not respect, but derision, of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing." Gall 552 U.S. at 54. The United States Sentencing Commission has recognized that alternatives to incarceration "divert offenders from the criminogenic effects of imprisonment which include contact with more serious offenders, disruption of legal employment, and weakening of family ties." See "Sentencing Options Under the Guidelines," United States Sentencing Commission (1996).[3]

Chavez respectfully requests this Court consider that a below-guidelines sentence would afford him a better opportunity to make amends for his sins and repay the community for the funds he improperly received. This is the first significant offense in Chavez' life (albeit, he has

---

[3] Available at: https://www.ussc.gov/sites/default/files/pdf/research-and-publications/working-group-reports/simplification/SENTOPT.pdf

accumulated a veritable handful of minor traffic infractions and several arrests for marijuana possession), and a substantial period of imprisonment is not necessary to deter him from committing any future crimes.[4] See United States v. Adelson, 441 F. Supp. 2d 506, 514 (S.D.N.Y. 2006), aff'd 301 Fed. Appx 93 (2d Cir. 2008) ("there is considerable evidence that even relatively short sentences can have a strong deterrent effect on prospective 'white collar' offenders."); see also "Fifteen Years of Guideline Sentencing," United States Sentencing Commission (2004) at 56 (noting that the Sentencing Guidelines were written, in part, to "ensure a short but definite period of confinement for a larger proportion of these 'white collar' cases, both to ensure proportionate punishment and to achieve deterrence.").[5]

In addition to the punishment imposed by this Court, Chavez will bear the stigma of the consequences of this felony conviction for the rest of his life. See United States v. Stewart, 590 F.3d 93, 141 (2d Cir. 2009) ("the need for further deterrence and protection of the public is lessened because the conviction itself already visits substantial punishment on the defendant"). In light of these considerations, Chavez asks this Court to vary below the advisory guideline range because a long term of imprisonment is unnecessary to deter him from committing further crimes.

### 4. CHAVEZ'S MINOR ROLE AND WITHDRAWAL FROM THE SCHEME

The Government often leverages the law of conspiracy as both a sword and shield. At trial, the jury was instructed that:

> A conspiracy or agreement to violate the law, like any other kind of agreement or understanding, **need not be formal**, written, or even expressed directly in every detail.
> …

---

[4] Chavez has already been incarcerated since July 14, 2021.
[5] Available at: https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-projects-and-surveys/miscellaneous/15-year-study/15_year_study_full.pdf

> To prove the existence of a conspiracy or an illegal agreement, **the government is not required to produce a written contract** between the parties **or even produce evidence of an express oral agreement** spelling out all of the details of the understanding. To prove that a conspiracy existed, moreover, **the government is not required to show** that all the people named in the indictment as members of the conspiracy were, in fact, parties to the agreement, or that all the members of the alleged conspiracy were named or charged, or **that all the people whom the evidence shows were actually members of a conspiracy agreed to all of the means or methods set out in the indictment.** Moreover, once a conspiracy is established, even a slight connection between a defendant and the conspiracy is sufficient to include he or she in the plan.

<u>See</u> Jury Instructions, Trial Tr. Vol. V at 936:16–18, 937:2–15

In essence, such an instruction reduces the evidentiary threshold required for the jury to make a finding of guilt, because the Government need not provide direct evidence of a "formal" or "express" agreement by a defendant to enter a conspiracy.

And yet, when it comes to withdrawal from a conspiracy, a defendant must:

> [S]how that he took **affirmative** acts inconsistent with the object of the conspiracy—that is, that he acted to defeat or disavow the purposes of the conspiracy—**and that these acts were communicated in a manner reasonably calculated to reach his co-conspirators**. **A mere cessation of activity in furtherance of the conspiracy is insufficient to prove withdrawal**.

<u>See</u> Government's Amended Proposed Jury Instructions at 61. (D.E. 298); <u>see also</u> <u>United States v. Allmendinger</u>, 706 F.3d 330, 341 (4th Cir. 2013) (reiterating that a "defendant's membership in a conspiracy is presumed to continue until he withdraws from the conspiracy by affirmative action. Withdrawal must be shown by evidence that the defendant acted to defeat or disavow the purposes of the conspiracy.").

Despite any assertion to the contrary, the law of conspiracy operates as a double standard by placing an undue burden on a defendant to take "formal" action to effect his **withdrawal** (which would potentially limit/reduce criminal liability), where no such "formal" action is required to

establish that a defendant has **joined** a conspiracy. While Chavez did not "affirmatively act to defeat or disavow the purposes" of the conspiracy, he did in fact withdraw from same. As discussed, Chavez effectively ended his participation in the conspiracy on July 8, 2015, after approximately eight months of involvement. See Trial Tr. Vol. IV at 696:23–24. Simply stated: Chavez **quit**, but the conspiracy continued on.

Chavez also played a much smaller role in the fraud. The amount of victim funds Chavez received compared to that of the other Miami "bridge cell" members (Paul Stiep and Wendy Duenas) confirms this. Paul Stiep and Wendy Duenas received 154 deposits of victim funds totaling $918,677.00 and sent $701,789.00 to the call center (representing payments to themselves of $216,888.00). Meanwhile, Chavez only received 54 deposits totaling $227,730.00, "earning" only $26,634.00 (one eighth of what Duenas and Stiep made).

As such, Chavez asks that the Court consider his withdrawal and minor role in the offense when fashioning an appropriate sentence. See United States v. Jimenez-Gutierrez, 491 F.3d 923, 926 (8th Cir. 2007) (affirming defendant's below-guidelines sentence of 96 months, where guidelines were 188–220 months, because the advisory guidelines range was "too high to permit adequate differentiation between [d]efendant, as a mid-level conspirator, and higher-level conspirators who clearly had to exist in the particular conspiracy at issue.").

## 5. THE MANDATORY CONSECUTIVE SENTENCE UNDER 18 U.S.C. § 2326 JUSTIFIES A DOWNWARD VARIANCE

At trial, the jury determined the offense conduct was in connection with telemarketing. See Jury Verdict Form at 3. (D.E. 301). Therefore, under 18 U.S.C. § 2326(1), the Court must impose a consecutive prison term of **up to** five (5) years, in addition to any other sentence Chavez receives for the money laundering and wire fraud counts.

Given the already significant advisory guideline range, Chavez respectfully submits that a substantial downward variance is necessary to prevent unwarranted sentencing disparities (further discussed below) between himself and his co-defendants, and to ensure that the sentence is not greater than necessary to satisfy the factors outlined in 18 U.S.C. § 3553(a). See Dean v. United States, 137 S. Ct. 1170, 1176 (2017) (holding that, in cases where a defendant is convicted of multiple counts, a court may vary downwards from the guidelines to account for a mandatory minimum sentence that must also be imposed).

The potentially disparate impact of this statutory enhancement is why we urge the Court to sentence Chavez to forty-eight (48) months' imprisonment on the money laundering and wire fraud counts, followed by a mandatory consecutive prison term of zero (0) months, resulting in a total sentence of forty-eight (48) months in prison.

## 6. THE NEED TO AVOID UNWARRANTED SENTENCING DISPARITIES

Under 18 U.S.C. §3553(a)(6), courts must consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Data collected from fraud cases across the country and within the Western District of North Carolina, as well as a representative sample of sentences, demonstrate a downward variance in this case would not lead to unwarranted sentence disparities for similarly situated defendants.

### a. NATIONAL AVERAGE LENGTH OF WIRE FRAUD SENTENCES

From October 1, 2021, through June 30, 2022, the United States Sentencing Commission compiled sentencing data for 47,002 cases from every federal jurisdiction. See "FY22 Third Quarterly Sentencing Data Report," United States Sentencing Commission (September 8, 2022).[6]

---

[6] Available at: https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/quarterly-sentencing-updates/USSC_Quarter_Report_3rd_FY22.pdf

In 14,141 (30.1%) of those cases, defendants received a downward variance from the advisory guidelines range. Id. at 11. Of those 14,141 defendants that received downward variances, 1,535 (10.8%) of them were convicted of fraud related offenses. Id. at 27. The average sentence for those 1,535 defendants was twenty (20) months, with an average downward variance equivalent to a 59% decrease from the bottom of the advisory guideline range. Id.

Here, the advisory guideline range of one 188 to 235 months' imprisonment **is between nine (9) and twelve (12) times the national average** for those who received downward variances. Thus, a downward variance here would conform to national sentencing trends of economic offenders, prevent unwarranted disparities in sentencing, and ensure the sentence reflects the seriousness of the offense.

### b. TYPICAL WIRE FRAUD SENTENCES IN THE WESTERN DISTRICT OF NORTH CAROLINA

An analysis of the average sentence length imposed on defendants convicted of fraud related offenses in the Western District of North Carolina further evidences a downward variance from the advisory guideline range would not only be reasonable, but also in line with general sentencing practices in this District. The Sentencing Commission's "Interactive Data Analyzer" revealed that, between 2015 and 2021, there were three-hundred and twenty-five (325) reported cases involving fraud in this District where defendants had a criminal history category of I (results reproduced below). The average sentence length for those defendants was twenty-four (24) months, with the median sentence being fifteen (15) months. It is important to note that these figures include sentencing information for all fraud-related cases, not only those in which a downward variance was granted.



**Average and Median Sentence Length**

Fiscal Year 2015,2016,2017,2018,2019,2020,2021

■ Sentence Length (Average Months)   ■ Sentence Length (Median Months)

The figure includes the 325 cases reported to the Commission. Cases missing information necessary to complete the analysis were excluded from this figure. Sentences of 470 months or greater (including life) and probation were included in the sentence average computations as 470 months and zero months, respectively. Sentences of probation only are included here as zero months. The information in this figure includes conditions of confinement as described in USSG §5C1.1.
FILTER:
Fiscal Year: 2015,2016,2017,2018,2019,2020,2021; Circuit: All; State: All; District: North Carolina, Western; Race: All; Gender: All; Age: All; Citizenship: All; Education: All; Crime Type: Fraud/Theft/Embezzlement; Guideline: All; Drug Type: All; Sentencing Zone: All; Criminal History: I; Career Offender Status: All

      The 188-to-235-month advisory guideline range in this case **is between eight (8) and ten (10) times the average sentence imposed on defendants in this District.** Consequently, the Court should place greater emphasis on the mitigating factors set forth in support of a below-guidelines sentence. See <u>Adelson</u>, 441 F.Supp.2d at 515 (stating that, "where the Sentencing Guidelines provide reasonable guidance, they are of considerable help to any judge in fashioning a sentence that is fair, just, and reasonable. But where, as here, the calculations under the guidelines have run so amok that they are patently absurd on their face, a Court is forced to place greater reliance on the more general considerations set forth in section 3553(a), as carefully applied to the particular circumstances of the case and the human being who will bear the consequences.").

### c. REPRESENTATIVE CASES WARRANTING A BELOW-GUIDELINES SENTENCE

"[D]istrict judges have an obligation to consider whether to depart from the Guidelines sentencing range or to impose a non-Guidelines sentence in every case." See United States v. Corsey, 723 F.3d 366, 382 (2d. Cir. 2013) (Underhill, J., concurring). Below are the sentences imposed on four of Chavez's co-defendants, as well as the sentence received by another defendant in an unrelated sweepstakes telemarketing scheme in this District:

    i.    United States v. Parks; Case No.: 18-CR-00311-MOC (Defendant sentenced to fifty-seven (57) months' imprisonment and two (2) years of supervised release for role in the instant offense).[7]

    ii.    United States v. Richer; Case No.: 17-CR-00311-MOC (Defendant sentenced to fifty-one (51) months' imprisonment and two (2) years of supervised release for role in the instant offense).[8]

    iii.    United States v. Oman; Case No.: 18-CR-00311-MOC (Defendant sentenced to thirty-seven (37) months' imprisonment and two (2) years of supervised release for role in the instant offense).[9]

    iv.    United States v. Stiep; Case No.: 18-CR-00311-MOC (Defendant sentenced to eighty-four (84) months' imprisonment and two (2) years of supervised release for role in the instant offense).[10]

    v.    United States v. Shephard; Case No.: 13-CR-00021-RJC (Defendant sentenced to ninety-six (96) months' imprisonment for her role as a "loader" in an unrelated Costa Rican sweepstakes telemarketing scheme involving a loss of $7,215,695.20).

---

[7] Chavez submits that, given the mitigating factors set forth herein, and the need to avoid unwarranted sentencing disparities between co-defendants, his sentence should be no greater, and certainly less than, those of his co-conspirators who played a much more significant role, and were far more culpable, in perpetuating the scheme sub judice.

[8] See Footnote 7, supra.

[9] See Footnote 7, supra.

[10] See Footnote 7, supra.

These cases illustrate that a below-guidelines sentence would be sufficient—but not greater than necessary—to satisfy the factors outlined in 18 U.S.C. 3553(a).

## V.     CONCLUSION

"It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate . . . the crime and the punishment to ensue." Koon v. United States, 518 U.S. 81, 113 (1996). Considering the mitigating factors set forth herein and circumstances of this case, Chavez respectfully urges this Court vary downward from the advisory guideline range and impose a fair and just sentence, which we contend is: forty-eight (48) months' imprisonment on the money laundering and wire fraud counts, followed by a mandatory consecutive prison term of zero (0) months (pursuant to 18 U.S.C. § 2326), totaling a sentence of forty-eight (48) months in prison.

Respectfully submitted,

TIN, FULTON, WALKER & OWEN
Attorneys for Defendant
301 East Park Avenue
Charlotte, North Carolina 28203
Telephone: (704) 338-1220
Facsimile: (704) 338-1312
cmowen@tinfulton.com

By:     s/Carole Melissa Owen
         CAROLE MELISSA OWEN
         North Carolina Bar #28903

GRAYROBINSON, P.A.
Attorneys for Defendant
333 S.E. 2nd Avenue, Suite 3200
 Miami, Florida 33131
Telephone: (305) 416-6880
Facsimile: (305) 416-6887
Jhirschhorn@gray-robinson.com

By:     s/Joel Hirschhorn
         JOEL HIRSCHHORN
         Florida Bar #104573
         Admitted Pro Hac Vice

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 3, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

s/Carole Melissa Owen   s/Joel Hirschhorn
CAROLE MELISSA OWEN   JOEL HIRSCHHORN

# EXHIBIT 1

<u>**CHAVEZ adv. USA**</u>

<u>**Defendant's Summary of All Bridge Cell Deposits from November 19, 2014 to July 8, 2015**</u>

The following table represents the total approximate loss amount generated by the conspiracy during the time that Manual Chavez was involved in same. The below figures were taken from the Master Loss Analysis prepared by S/A Erik Kost, and subsequently utilized by the Government at trial. <u>See</u> Government Exhibit 46.

| Account | Dates | Amount |
|---------|-------|--------|
| CHAVEZ-BofA 5737 | 11/19/2014-2/10/2015 | $ 127,562.97 |
| CHAVEZ-Chase 5417 | 1/22/2015-7/7/2015 | $ 100,168.98 |
| FRAZIER-BofA 2336 | 12/2/2014-4/24/2015 | $ 49,168.00 |
| MoneyGram Activity | 11/19/2014-7/8/2015 | $ 243,054.29 |
| PARKS- Gr NW FCU 600-7 | 4/13/2015-6/5/2015 | $ 25,903.75 |
| STIEP-BofA 2387 | 11/19/2014-7/8/2015 | $ 332,374.00 |
| STIEP-BofA 4131 | 1/13/2015-6/9/2015 | $ 48,032.00 |
| STIEP-Citi 3484 | 2/24/2015-6/12/2015 | $ 12,012.00 |
| Western Union Activity | 12/3/2014-7/7/2015 | $ 110,669.00 |
| | | **TOTAL** |
| | | $1,048,944.99 |

# EXHIBIT 2

15024 SW 88 Ln Miami, FL 33196

786-283-1112

Drewpani89@gmail.com

Hello Judge Cogburn,

My name is Andrew Paniagua, a 32 year old american citizen writing to you from Miami,
Fl on behalf of my cousin Manuel Chavez. But first let me introduce myself.

I was born with sickle cell anemia which unfortunately manifested a chronic pain
condition in my hips so I'm disabled and don't work. I have my heart set on a surgery
that could hopefully change that and i plan to get that done this year. I spend my time
at home helping take care of my mom (we take care of each other more like), raising my
nephew, and trying to take care of myself through exercise and eating right. On my
leisure time I like most people induldge in video games and tv but i also like to feed my
mind in the form of science, politics, and the arts as i enjoy learning about the world. I'd
say outside of my disease I'm a pretty average joe.

My cousin has been a big part of our family ever since our parents found each other
again some twenty-plus years ago. We played and hung out as kids then tweens and
now as adults we stayed close. In fact Marcos (as we in the family like to call Manuel),
our other cousin Jeffrey, and I are known as the three musketeers of the family. He
would always check up on us in this house and as a disabled person i benefited from
having someone always around since it is so hard to socialize and make new friends
when you're always home. If i was being honest most of my friends I met through
Manuel so he has been an integral part of my life. He always encourages me to work out
with him and even though i havent been able to in a while he has had an open invatation
waiting for me. He loves his family very much as evident by how he is with his nephews.
They are very important to him and i see him try his best to be a good role model to
them and look after them as much as he can as well. But the line does not stop at family
either; our friend Jose told me of how Manny would bring him medicine when he was
sick. He is that kind of considerate friend that would even go so far as to get you
geoceries if you needed them. These are the types of stories i hear from my friends
whenever they speak aboit my cousin. He really is a stand up guy and we lean on each

other and when push comes to shove he is a very dependable person.

I understand Manuel has been convicted of telemarketing fraud and justice has to be served. I ask that you please consider giving him the minimum sentence. If you could do this we would be very grateful as we love our cousin very much and want to see him out and well as soon as possible.

Thank you for your time and consideration,

Andrew Marvin Paniagua

January 07, 2022

Honorably Judge Cogburn

My name is Angela E Paniagua, residing at 15024 SW 88 St Miami FL 33196, cellular number 786-230-0223, email, apania4881@gmail.com, I hold an active Real Estate Broker's license since 1996 (1992 associated R.E. License) I am the Principal Real Estate Broker of Prime Terra Realty, Inc. since stablished back in 2013.

I am Manuel Chavez' aunt, I know him since his birth, and we have a phenomenal relationship, He is a bright, hardworking taxpayer, always ready to lend a helping hand to anyone in need be a friend, family or people at large. Loved and respected by everyone that knows him.

I understand that he was found guilty of participating in a telemarketing scheme, this news has devastated us and is a situation we are dealing with the upmost respect to society.

I humbly ask your Honor for leniency.

Respectfully yours,

Angela E Paniagua

Anthony C McCarthy
4121 Thomas St Hollywood, Florida 33021 954-446-5549 tony9014@live.com

January 6, 2022

Dear judge Cogburn,

My name is Anthony Christopher McCarthy I'm currently a federal contractor working for a security company called constellis. I was in the United states army serving as infantry in the years of 2010-2013. I also served in combat from july 2011 to june of 2012. I'm currently in Kuwait on a contract serving as an armed guard.

My relationship with Manny Chavez is that he is a very close friend. I have known Mr. Chavez for 18 years. Mr. Chavez has always been a very kind hearted person, he's always been a great friend. When I was getting out of the army I had a very tough time acclimating to society. I was very quick tempered and irrational sometimes and Manny would be the person to help me calm down and be able to look at my situation in a positive way. Manny has always been a lover not a fighter growing up together.

I understand he's been convicted of telemarketing fraud. When I discovered this honestly it was extremely surprising for me. It really does break my heart because I never thought he would do something like that. I strongly believe and genuinely pray Mr. Chavez, if given a light sentence, would absolutely and certainly change his life around in a positive manner. With all my heart I don't believe he's what society would label as a "career criminal". I do believe in his heart he has deep regret for his past actions. I believe in his ability to correct his actions and be a good member in society.

With all my heart I hope and pray the court can take this letter into consideration at the time of sentencing. Despite the current case I believe Manny Chavez is an honorable, valuable and highly loved member of society and a friendly loving person.

Sincerely,

Anthony McCarthy

December 16, 2022

To: The Honorable Judge Cogburn

My name is Brianna Chavez of Miami Florida. For the past 5 years I have been a flight attendant at Spirit Airlines. I also maintain a 2-15 Insurance Agent license as well as an Esthetician license. This spring I will dedicate myself to the Diagnostic Medical Sonography program at Broward College. Remaining stagnant is a quality I do not condone and it is a quality Manuel and I share.

Manuel Chavez is my little brother and we were raised together since his birth. We are the closest in age and we share a special bond - just under two years apart to be exact, so we spent the most time together. Honestly, I wasn't very fond of him because he was an annoying little boy, you know, your typical younger sibling. Nonetheless, Manuel has always been a kind, sensitive, empathetic human being. He loves being in the company of family and friends and brings everyone around him, joy. His comical nature makes him that much more enjoyable.

I am fully aware of the severity of the telemarketing fraud crime Manuel has been convicted of and has taken his family and friends all by complete surprise. Manuel has always been a caring, loyal and trusting individual, and I strongly believe thats what got him in this situation. That is why as soon as he realized something wasn't adding up he quickly ended his employment with that so called company. He would never knowingly seek out to harm others in any kind of way. For reference, he worked as a manager at a club where the typical patron is drunk and acting out. Manuel handles even these kinds of situations in a gentle manner and has amazing deescalation skills.

I speak to him just about ever other day and even as he is in jail he remains positive and lends a hand to his peers. Whether it's emotional support or teaching the inmates about cars, he's always excited about making a positive difference in others peoples lives. He's making the most out of his time in jail by reading plenty of different kinds of books and planing his future. It is in his nature to devote his free time to learning and being better than yesterday.

We all are missing a huge part of our family without Manuel's presence. He makes everyones lives better. Manuel is 100% remorseful for the people that were affected by this crime and is willing to go above and beyond to make things right. I kindly ask you to take our letters of Manuel's character into consideration while making your decisions. I believe with everything in my being that he does not deserve to be in prison. We are truly grateful for you taking the time out to read these letters with compassion and all that you do.

Respectfully,

Brianna Chavez

January 4, 2022

Dear Judge Cogburn

My name is Bryan Torchon I am a business owner of Property Management company for the past 8 years based out of Pennsylvania. I attended college in Miami and graduated with a degree in Biology. I volunteered at Southwest Focal Point Senior Center in 2019 in assisting the elderly by teaching courses on hand-held devices. I also volunteered at Baptist Hospital in Pembroke Pines FL in 2020 to help with covid patients. I am currently pursuing a degree in Health Administration at Utica College.

I met Manuel Chavez in 2006 and we bonded immediately as friends. First thing I noticed about him was how much personality he has. He was able to walk into any situation and instantly put you at ease. He is genuinely a happy person and an outstanding member in his family. To add, he also told me numerous times how he is ready to start a family with his girlfriend, and that she is the one. Manuel has great work ethic and always looking for ways to improve and learn new skills. He is there when you need him the most.   For instance,   Manuel came to my rescue at 2 am on the side of the highway despite the fact we hadn't spoken for a little while at the time. I was able to still count on him to be there for me. He's a type of person you can rely on for a helping hand.

Manuel is the type of person to give you the benefit of the doubt, he is very trusting. Unfortunately, people took advantage of that, which is why he is in this predicament of the telemarketing fraud crime that he has been convicted of. Knowing Manuel personally, I'm certain that he would not have done this telemarketing fraud crime on his own accord. I understand the magnitude of the crime and it's heart-breaking that he mistakenly associated with this fraud.

His absence is deeply affecting his family and friends. We are praying for a safe and quick return to society.   I hope you consider this as you sort out his penalty. Your time is greatly appreciated by us all.

Sincerely,

Bryan Torchon, President
Torch Management LLC.
(718) 415-1168 – Cell
Torchmanagement123@gmail.com

12/13/22

Dear Judge Cogburn,

My name is Carmelo Andy Seymour, I am Manuel's nephew. I am a student at McArthur Highschool, currently in 10th grade and I am 15 years old. I have A & B's and play basketball and track. I really miss my uncle and was really upset and confused that he was found guilty of a telemarketing scheme. My uncle is a big part of my life. My dad has been out of my life since I was 1 year old. To be honest I only remember my uncle being the closest thing of a father. He takes me to the gym to train. We work on his car and he was currently teaching me to drive. I have other brothers and sisters, so my mom can't do it all. My uncle was the one that did the things my mom couldn't. I really miss him and wish I can see him soon.

I understand that my uncle was wrong and I would hope that you could grant my uncle leniency.

Thank you,

Carmelo Andy Seymour

Jan 12/21

Dear Judge Cogburn,

My name is Damian Shenk Chavez, I'm in 8th grade and I go to Hendricks Middle School. Manuel Chavez is my uncle and I've known and loved him for my whole life.

I understand that Manuel has been convicted of a crime. I am upset to hear about tio Manny getting in to trouble.

Tio Manny is very funny, kind and supportive. He is a very important person in my life. Tio has helped me countless times with homework, chores, and day to day problems. We share a love for cars and he's taught me so much. Tio Manny always brought a smile to my face. He always cared about my opian and how I feel. He's always made time for me and has alway been there when I needed him most.

My tio's absence is devastating and I miss my tio very much. Please honorable Judge Cogburn, show mercy on my tio.

Sincerely

Damian Shenk Chavez

12/13/22

Dear Judge Cogburn,

My name is Diana Chavez. I am Manuel's sister. I currently work at Memorial Regional as a medical assistant and go to school full time at night for Register Nursing. I have four kids, Carmelo 15, Shonnon 11, Selena 8 and Catalina 4. Manuel M Chavez Is my brother.

When I found out that my brother was guilty of a telemarketing scheme, I was devested. My brother is a huge help to because I am a single mother. His being gone has really impacted me and my kids. My son Shonnon has autism and requires specialties and therapy having my brother to help me with my other kids. I am able to take him and give him that attention,. My brother mostly helps with my oldest son Carmelo. My brother would help by taking him to the gym to train. They both shared a love for cars and my brother was teaching him to drive. The most important was the advice he would give my son. I know my son gets frustrated with being the oldest and having a learning disorder but he was able to relate with my brother because Manuel also has ADHD. Currently, my son has A & B's, Plays basketball, track, and volleyball. A lot of that is due to my brother. I am stretched very thin because I can't be at these places at once.

I understand that my brother was wrong and I would hope that you could grant my brother leniency.

Thank you,

Diana Gabriela Chavez

December 15, 2022

Dear Judge Cogburn,

We hope this letter finds you in good health. Our names are Diani Barut and Michael Guerrero, we are writing this letter to advocate for Manuel Chavez's character.

We met Manny through our mutual fascination with cars and we have maintained a good friendship with Manny and his girlfriend Lisa. During our friendship, Manny's character has consisted of humility, and especially kindness/generosity towards his fellow neighbor. As a result, we were completely appalled and devastated when he was found guilty of participating in a telemarketing scheme.

To us, Manny has consistently shown care and gone above and beyond with his actions to help his friends and even strangers. Manny consistently treats everyone with respect and dignity as he sometimes feels his physical image is a bit intimidating. For that reason, he aims to be the positive change in people that he so desires. He is a giant teddy bear on the inside! Manny is very caring towards his relatives, mother, and siblings; he regularly maintains contact with them to ensure they are in good health and/or spirits. We recall multiple instances of trying to plan nights out with him for a movie but instead he is busy taking care of a little sibling or nephew/niece or assisting his parents with repairs/errands. He is constantly talking about being a role model for his younger nephew/nieces, and he mentions he must do that through his actions.  As a friend, Manny has always been there to lend an ear during hard times; we greatly respect and appreciate that he is always candid even when it is hardest to hear.

We feel for the victims of this telemarketing scheme, and they will remain in our prayers. However, we feel the charges are completely out of Manny's character. We write this letter in hope you will consider the least severe sentence for Mr. Manny. We have missed him dearly in these last several months and we especially know of the burden that his absence has placed on his family and those that care for him.

We understand you may be very busy and thus, we would like to thank you for this time in reading this letter. Also, Merry Christmas and a Happy New Year to you and yours.


Respectfully,

Michael Guerrero & Diani Barut

12.13.22

Dear Judge Cogburn,

My name is Edwin Vicens, I'm a lead aviation technician for a company name CTS Engines, I'm also a member of a non-denominational church by the name of Kendal Community Church of God. I write you in regards to my cousin Manny. I've had my fair shares of trouble but I have made a lot of great forwards steps. For the challenges have once faced in the past, of being a convicted felon. I changed my life and went to aviation school and got my A&P license. I understand Manny has been found guilty of participating in a telemarketing scheme." It's shocking in so many ways because he has seen the things I've gone through. But I believe it's part of life to make mistakes. He has always had such a great character truly genuine kinda young man. I've always seen him strive to do better, always been a great listener and always give great advised. Manny is the youngest of his siblings but has always had an older outlook on life and the way he carried himself. He is a big part of our family kinda like a glue in so many ways with his nieces and nephews, friends and family. Especially with his nieces and nephews, which are always asking for him. He's one to always play with them and take them to parks and such activities. I truly am a man of many mistakes but I believe in chances to for those of us that are willing to learn and change from our mistake which is where Manny is current. I respectively ask for leniency for manny. He is truly a young man of great character. So I pray and ask you for your help for grace and understanding. Thank you for your time.

Sincerely,

Edwin Vicens.

January 8th, 2022

Honorable Judge Cogburn,

My name is Ignacio Vargas Mendoza and I present myself to you through this letter.

I would like to tell you that I have known Manuel Chavez for many years, since he was very young, because I am his stepfather with great pride. Manuel has always been a very respectful person, with good feelings, from a very close family. I love Manuel like a real son; therefore, this means a lot to me.

I am aware that Manny has been accused of a telemarketing scheme, I am so sorry for what is currently happening, this is devastating, very shocking because this is not part of his personality. Manuel is a man of very good values instilled in him since childhood.

This is very painful and worrying. I deeply miss my son and for that reason, I humbly ask for leniency at the time of judging him.

Thank you in advance for your time and consideration in this case.

Sincerely,

Ignacio Vargas Mendoza

Dear Judge Cogburn,

Hello Judge, my name is Joey Evora. I am a Filmmaker and Key Rigging Grip, currently working for Marvel Studios. I am writing you, on behalf of Manny Chavez. The purpose of this letter is to simply inform you of Manny's character and illuminate the person within. I respectfully ask that you please take the following into consideration when he eventually stands before you.

Manny is the Uncle of my 2 wonderful boys. Whom I share with his sister, Tatiana Chavez. Manny has been a loving and doting Uncle from the start. He has always made time to call and visit all of his nieces and nephews. Whenever he comes to visit, he never leaves without discussing when he's coming back. He has made the 10 hour drive many times in the 5 years we've lived in Georgia. As well as helping family and friends. And has held true to his word every time.

Manny is not perfect by any means. The hardships Manny faced as a child is unfortunately all too common these days. A struggling Mother working multiple jobs to pay the bills and have almost no time or energy to devote to her children. As well as a barely existent and very disruptive Father, when present. With Mom and Dad constantly battling and fighting. Mentally and sometimes physically. Manny and his sisters were constantly caught in the crossfire. I will spare you the details, but please understand they were drug through the mud their entire childhoods. It wasn't pretty by any stretch of the imagination. With that being said, Manny miraculously emerged with a huge heart and a good head on his shoulders.

You see Judge, Manny was not taught or given the necessary skills and tools to be a productive member of society. He was forced to figure life out on his own for his first 20 years. Manny had almost no role model or positive example to emulate or learn from. And is easily taken advantage of. He has put trust in many people and has been let down more times than not. I strongly feel his current situation is a direct result of that misguided trust. Although he's made some mistakes along the way, I have been very impressed with his progress over the years.

Manny is a work in progress. He also has lots of positive attributes. Some hardwired and some he simply acquired on his own. Manny is a hard working and driven individual. He is goal oriented and possesses the necessary passion to achieve those goals. More importantly, he has a strong sense of humility needed to succeed in business and life.

Your Honor, it is my strong belief and conviction that Manny will go on to do great things. Not only for his family, but for many that will eventually cross his path. I also feel that if his progress is continued to be interrupted by prison, we will lose the person Manny has worked so hard to become. The hero my children adore. The brother holding the sisters together. The son who overcame, and forgave his parents.

Truthfully, Respectfully and Sincerely yours, Joey Evora.

Jan 10, 2022

7001 NW 5th Street Plantation, FL 33317

January 8, 2022

Dear Judge Cogburn,

My name is Joshua Gamboa. I am a loving family man and I'm a God fearing man. I am also a man of many career paths. I have an Associates in Economics. Also, I am licensed in the state of Florida and Texas as a Public Insurance Adjustor. To further, I own and operate a few modest businesses. One is a tea manufacturing company, Sanctuary Teas. The other, a vegan taco restaurant, V Tacos.

I've known Manny for many years. Since I was a child, my father moved me and my older brother around a lot, and this resulted in me being the new kid in school more often than I desired. Due to the recession, we were forced to move once again, I was finally in high school and the new kid, and this is where I met Manny. He noticed me eating lunch by myself, so he introduced himself. Instantly we became good friends.

Over the years, I come to believe that being friends with Manny meant you were his family. He cares for people in a genuine way, one you don't see often in this era of the internet. He loves and cares for his mother and he's always been a positive aspect in my life along with everyone around him. Manny mentors me in many aspects of life. Tasks as simple as car maintenance and some not as simple such as how to grieve a passing relative. He's a man of his word and his the most caring person I know. I see this quality as one of his best attributes, however, this has also led up to people taking advantage of him.

I understand that Manny has been found guilty of participating in a telemarketing scheme. When I found out, I was hurt and even devastated. This is out of his character and never have I ever imagined him being in this position. I wish to respectfully ask for leniency on my friend and my brother Manuel Chavez. Your honor I want to thank you for time.

Sincerely,

Joshua Gamboa

Joshua Gamboa

Lisa Mareachen
1309 S 23rd Ave.
Hollywood, LF 33020
954-860-0383

January 4, 2022

Dear Judge Cogburn,

My name is Lisa Mareachen and I am Manny's girlfriend. I currently bartend in Hollywood, Florida in the Hard Rock Hotel and Casino and Ihave my license as a Real Estate agent. Imet Manny at work in 2019 and we have been togetheralmost every day since.

My experience with Manny has brought more happiness and joy into my life than Iever thought was possible and every day without him feels like an eternity. Manny is the type of guy that always pulls over to help a stranger on the side of the road, that stops to help a neighbor in need of an extra hand, that would go out of his way to help a friend and is always willing to find time for his mother, sisters, nieces, and nephews. He is chivalrous, polite, and is always trying to make everyone laugh with his goofy childlike sense of humor. It's impossible to stay in a bad mood around him because he's always so positive and up lifting and putting things into perspective. He is a family man and hopefully will be able to have one of our own someday. I am beyond grateful to have a man like him in my life and I look forward to spending the rest of our lives together.

I understand that he was convicted of being involved in a telemarketing scheme and the severity of the crimes that have been committed. Even with the current case I still believe Manny Chavez is an honorable man, a valuable member of my community, and a very good human being. I please ask the court for as much leniency as possible in his sentencing.

Lisa Mareacen

Dear Judge Cogburn,

My name is Lucian and i go to kelly mill elementary, And I am in the 5th grade. Manuel Chavez is my uncle, And i've known him my whole life.

I understand that my tio was found guilty for a crime

I am shocked to find out that my tio is in trouble. And it makes me sad.

When my Tio comes up I think of Kindness, happiness, and leadership. I think that he is good adult figure because he teaches me a lot. Like every time me and my brother argue, He would help solve it He is patient, funny, and caring. I love

him very much.

I miss my Tio a lot already. Your honor
may I please ask in the nicest way possible
that you have a little leniency on my
Tio Manny.

Sincerely,
Jeff

Lucian Evora-chavez

12/5/22

Dear Judge Cogburn,

My Name is Mary Martinez, I am a small business owner and employer in Miami, Florida. I write to you today to talk about my cousin, Manuel Chavez. He is the youngest child of my mom's oldest sister. As are a large hispanic family, we all were raised together as a unit. Although he is 9 years my junior, growing up he was very close with my younger siblings, and you could alway find him over at my house. I've watched Manuel as he has grown from a rambunctious tyke to a charismatic, family centered young man. Manuel has always been there as a helping hand for me and family, whether we needed him to help to move or to babysit, or even just to lend an ear - Manuel has always be there for us.

I understand that Manuel was found guilty for a telemarketing scam, and I understand that my cousin showed a serious lapse in judgment by participating in this scheme. While it is unfortunate the decisions that my cousin chose to make in his youth, I beg the court to consider some leniency when it comes to Manuel's sentencing.

When I first heard of this situation, I was in total shock; Manuel has his whole life ahead of him and he is potentially facing a long time in federal prison. It comes at no surprise to me, however, that Manuel is ready to accept responsibility for his actions. I believe that this shows, despite his' initial lapse in judgment, the true level of integrity that Manuel has. Manuel has expressed deep remorse for the decisions he has made, and I believe in my cousin's ability to pay his debt to society and rehabilitate quickly. I believe Manuel to be a good person, and I believe at the end of this he will emerge even better. Maya Angelou once said, "I did then what I knew how to do. Now that I know better, I do better." In my opinion, these words ring true for my cousin.

I know it is hard to perceive the depth of Manuel's character from these few words and anecdotes, but please your Honor, if you can take away anything from my letter let it be this - Manuel is loved. He is cherished by our family, and his loss is devastating to all of us. Manuel holds our family together, and his absence from our daily lives is palpable. Losing him for decades to federal prison is truly incomprehensible. I love my cousin immeasurably; he is like a little brother to me. With all of my being, I whole-heartedly believe that Manuel has a lot to contribute to society, and that any amount of time away from our family serves as enough to discipline for Manuel.

I hope this letter finds you well and in good health, your honor. And I thank you for the time you have taken to read my words.

Sincerely,

Mary Martinez

Metzli Vasquez

13967 SW 44th Lane Circle Miami, FL 33172

January 6, 2022

Honorable Max O. Cogburn Jr

Judge of Western District of North Carolina

100 Otis Street

Ashville, NC 28801

Re: Sentencing of Manual Chavez

Dear Judge Cogburn,

My Name is Metzli Vasquez, and I lead several successful offices that perform microcurrent technology services in the state of Florida. I am writing on behalf of my dearest friend, Manuel "Manny" Chavez, respectfully requesting reconsideration for his sentencing.

I have known Manuel for almost two decades now. We met early on in our pre-teen years. At a time when kids can be cruel, Manuel's caring and protective personality acted as a shield between the everyday bullies and me. It didn't take long for me to see how endearing and supportive he was. He has been a constant in my life. I gained a brother the moment I met Manuel.

I believe in justice and Manuel's conviction for International telemarketing fraud is not an easy pill to swallow. I understand the severity of this case, the crimes committed and the harm it has caused to the victims as well as Manuel's emotional and spiritual being. This sentencing will forever change the lives of everyone involved and their loved ones.

"*If you have **faith the size of a mustard seed,** you will say to this mountain, 'Move from here to there,' and it will move.*" This letter is my form of a "mustard seed. "As I mentioned earlier, I believe in justice and I also believe in mercies but they are not mutually exclusive, both can exist as a reflection of each other. Manuel has always been in my corner when I needed him most and if writing this letter means it may reduce his sentencing then I would do one everyday if need be. I kindly ask if you can, out of the kindness of your heart, reduce Manuel's sentencing as you see fit, your honor. We all need someone who can give us a second chance, isn't that what makes us human?

Respectfully,

*Metzli Vasquez*

Metzli Vasquez

December 5, 2022

Dear Judge Cogburn,

My name is Michelle Martinez, and I own and operate a small business in South Florida that provides administrative support to local real estate agents and brokers. I'm writing this letter to request leniency for my cousin Manuel Chavez.

I am 11 years older than Manny. As a child, he was closest to my younger siblings, Andrew and Paola, who are physically disabled. Paola has albinism, while Andrew suffers from sickle cell anemia. As a result of their close age, it was fun seeing them spend weekends, holidays, spring break, summer vacation, and winter vacation together. They were happy little kids, without a care in the world. Throughout Manny's youth and as he entered high school, he often visited with friends. Eventually, his friends became friends with my younger brother, who had suffered crisis after crisis for quite some time and was bedridden. The efforts my cousin made in order to maintain a state of normalcy for my younger siblings were always appreciated by me. In Manny's eyes they were merely differently abled and deserved friendships. Even as he grew older, his gregarious and kind nature remained while he was hardworking.

The 11-year gap became smaller with time. I became closer to my younger cousin in recent years. I was able to witness as he pushed himself to become the best at his chosen profession and provide for his family. I was shaken by the thought that he may not be with us for long. Among our family, Manny is someone we can count on and lean on. It is my sincere belief that Manny regrets his actions and will never repeat them. I humbly request a lenient sentence since prison time will severely complicate the lives of his family. Thanks for taking the time to read my letter.

Sincerely,

Michelle Martinez


Date: 1/05/2022

Dear Judge Cogburn:

I met Manny 3 years ago and he is now my brother-in-law. We have spent many close times together. I own a business in Georgia and reside outside of Atlanta.

I fully understand the charges Manny faces and the circumstances around it.

I have spent a lot of time with Manny learning who he is and his personality. As a small company owner for over 20 years I have learned to judge peoples character quite well. Without question, Manny is a good hearted person that made some poor judgements working alongside some unsavory characters. Im confident Manny would never harm anyone in anyway under his own knowing. He is one of the kindest people I have ever met and any kind of long term penalty would be ruining the life of someone who has so much yet to give to his family, friends and community. His loss is already having a devastating effect on everyone around him. He is planning to have children and settle down with a lovely women he has met, and was working diligently in his town to make ends meet and those dreams come true.

I beg you to take this into consideration as you sort out his penalty.

Mike McGuinness, BCE

Entomologist
Interpest, Inc.
678-787-6892 – cell
678-985-8800 – Office
mikem@interpestinc.com

December 14, 2022

Monique Dolecki
32 Eileen Drive
Mahwah, NJ 07430
201-803-7997
moniquedolecki@gmail.com
Subject: Character Letter for Manuel Chavez

Dear Judge Cogburn,

I am Manuel's half-sister and write the court in support of a request for leniency in sentencing him. My name is Monique Dolecki and I am a resident in Bergen County, New Jersey. By way of further background, I am 42 years old and a mother of two young girls ages 7 and 6. For the past twenty years I have worked in finance, in roles of increasing responsibility. Most recently, I served as the Senior Vice President of Finance for a Fortune 200 healthcare company in northern NJ.

While Manny and I did not grow up in the same household, we share a mother. Manny's father, by society's standards, is considered a deadbeat and sadly was not present for the most formidable years of my brother's life. I mention this because I can not help notice the stark contrast of my career versus the situation in which my brother, Manny, currently finds himself in. And it is my belief, that our respective backgrounds and guidance we received — or lack of guidance in my brother's case — helped shaped these very different outcomes in our lives.

Manny is his own man now and his extremely difficult childhood is no excuse for violating the laws in our country. I am aware that Manny was convicted on multiple counts of mail and wire fraud for his participation in a $4.5 million dollar telemarketing scheme, where many of the victims were elderly. Reading about these charges and the people impacted disturbed me deeply, especially given my finance background and the fact that I take great pride in financial stewardship, literacy and compliance. With that said, I wholeheartedly believe that my brother,

Manny, did not comprehend the illegalities of his actions. My friends that know about the case have said to me, "C'mon do you think your little brother could be that stupid?" My answer was, "Sadly, yes."

Judge Cogburn, I hope that you can hear the candor in this letter. With that, I respectfully ask that you impose the least severe sentence for my brother, Manny Chavez. If you got to know him as a person I believe that you would like him. I have had the opportunity to form a relationship with him over the past twenty years. We have spent considerable time together 1 on 1 and I have watched him interact with my daughters on many occasions. During that time he has demonstrated that he has a giant heart and would help anyone that asked. He believes in God. He is gentle and loving with my children. He was looking forward to getting married to his girlfriend and starting a family of his own. The tragedy for me, is that his giant heart is only matched by his level of naiveté and when he was a 22 year old kid he put his trust in people that shouldn't have been trusted. He was not wise enough to know what he was doing wrong. I can assure you judge, that my brother Manny is beyond remorseful and will re-enter society as a changed man. More importantly, a more educated man. I can also assure you, that after his time is served I will do my best to be a mentor to him and give him the guidance that he needed but never received.

Judge, I thank you for your time and consideration for leniency in his sentencing.

Respectfully yours,

Monique Dolecki

Sarah Lamothe

Palos Verdes Ca, 90275

Sasou0003@yahoo.com


December 15th, 2022


Dear Judge Cogburn,

My name is Sarah Lamothe, I am a Human Resources professional currently living in California. I am writing this letter concerning Manuel Chavez. I have known Manny for 14 years now. I am puzzled to hear about his case as Manny has always been such a kind and sincere person. I understand the seriousness of this case, but I do pray that the court will show some leniency.

Manny has always been such a kind hearted person. The Manny I know cares so much for others. He is always willing to help people in any way he can. Manny not being around has greatly affected his friends and family. In all of the time I've known Manny, I can confirm that he is a reliable person. I believe he would never purposely harm anyone. Manny is a wonderful son, brother, uncle, nephew, friend and planned on being a great role model to his children one day soon. With this in mind, I am respectfully asking you to grant him the leniency and mercy of the court.

Knowing you have a very busy schedule; I want to thank you for your time and attention in this matter.


Sincerely,

*Sarah Lamothe*

Sarah Lamothe

January 6, 2022

Dear Judge Cogburn,

My name is Stephanie Samuelson, and I am a working pharmacist. I have worked both in my local community from a retail pharmacy and across the United States from a call center pharmacy. I am also a veteran from the United States Navy where I honorably served for 6 years. I am writing this letter to discuss Manuel Chavez, whom I have known for almost 2 decades. Manuel Chavez, or as I better know him as Manny, is the brother of my best friend Tatiana Chavez from high school.Tatiana is my dearest friend, and her family is also my family at heart. I have known Manny since I was in high school and have only seen nothing but kindness from him over many years of knowing him.

I was informed that Manny was found guilty of participating in a telemarketing scheme and understand the consequences that he might face. This is not including what he is already experiencing at this very moment. To be honest, it saddens me that Manny was found guilty of participating in a telemarketing scheme. He is a kind and caring person with a good soul. Over the years of knowing Manny, I have never seen him mistreat others. In fact, I have only witnessed nothing but sincere love and kindness from Manny. If someone needed help, he was always the first to volunteer to help them. Manny is gentle and sweet individual. He loves his family and is consistently there to support them throughout the years. Therefore, it was

absolutely shocking to find out that he was participating in a telemarketing scheme.

In my years of experiences as a pharmacist I have seen these types of scams and the devastation that they can cause anindividual. I have had multiple patients visit the pharmacy with requests to purchase hundreds of dollars in gift cards. To these same patients, I have spent the time to help them understand how to avoid these type of telemarketing schemes. However, I never thought to teach my family and friends how to avoid participating in a telemarketing scam. I could never imagine that Manny would be calling or pressuring people to give him money over the phone. However, I can imagine Manny falling for something that is too good to be true. As unfortunately, this is not something that is taught in most Hispanic households.

We tend to jump into opportunities without ever looking which way we are going. To some benefit it has allowed us to keep improving as a culture, but it is also something that holds us back. It saddens me most because I too grew up in Miami and know that there are plenty of people that would fall victim to participating in these telemarketing schemes without ever understanding the consequences of their actions. When you grow up in a poor Hispanic family, you sometimes miss out on valuable lessons that are later learned in the real world. Unfortunately, this is something that Manny has had to learn the hard way.

My only request would be to ask for just some leniency in his sentencing. Manny is not just my friend, but also my family. He is a good person, possibly a little misguided by our upbringing, but a truly kind individual that just wants to make people smile.

My only request would be to ask for just some leniency in his sentencing. Manny is not just my friend, but also my family. He is a good person, possibly a little misguided by our upbringing, but a truly kind individual that just wants to make people smile.

Sincerely,

Stephanie Marie Samuelson

December 7, 2022

Dear Honorable Judge Cogburn,

My name is Sydney O'Rourke-Walker, and I am a full time graduate student from Savannah, Georgia. I am writing you this letter on behalf of my dear friend, Manuel "Manny" Chavez, respectfully requesting leniency in his sentencing.

I have known Manny for a few years shy of a decade, introduced to him through his older sister, and through the years I've begun to view Manny as nothing shy of family. To the best of my ability, I understand that Manny is currently being sentenced for his conviction for international telemarketing fraud. I fully understand the severity of this case, and accept Manny's responsibility in his crimes. Manny has made bad choices, and I'm not negating that he deserves to be punished, I humbly asking, your Honor, for some consideration when it comes to the duration of time sentenced.

Sometimes, good people do bad things, and in my humble opinion Manny is nothing if not a good person. Manny is the type of guy you can call for anything, he's one of those rare people that genuinely want to be helpful others in any way that he feasibly can. He is my one friend I can always rely on: whether its to help me move, provide me a place to stay, or driven over to my house in the middle of the night to jumpstart my car because I had work early in the morning. He has always been there for me with a listening ear and a thoughtful word. Life hasn't offered Manny any favors when it comes to role models, his mother was severely physically abusive and his father was completely absent, in spite of this Manny is who he is today. He's not the time to be spiteful or haunted by the past, and if anything he's made it a point to be contradictory of his upbringing. He fiercely loves his family, and treats his nephews and younger cousins like they are his own children. He's a loyal friend to a fault, and he has consistently through the years treated me with kindness and generosity. Manny is so much more than the crimes he committed when he was younger. Manny is a friend, a son, a brother, a boyfriend and a colleague; Manny as so much potential and he offers so much to those around him. He's an extremely good natured person, friendly, considerate, and compassionate to others. If Manny was to be granted the maximum sentencing it would be serve as a figurative death sentence, he has always wanted to be a husband and father himself, and was actively making steps towards those goals at the point of his conviction. I met Manny after he committed the crimes he has been convicted of, and I truly believe that the man he is today would make vastly different choices if given the same opportunities.

We are suffering from the loss of Manny, and this sentencing is not just for him but all of those who love him dearly. Hopefully this letter's existence is a testament in itself. I pray that reading my letter, and the numerous letters painstakingly written by Manny's other

friends and family, can attest to a modicum of Manny's character.

Respectfully,

Sydney O'Rourke-Walker

01.01.2022

The Honorable Max O. Cogburn
United States District Court judge
Western District of North Carolina

Re: Manuel Chavez

Dear Judge Cogburn,

My name is Tatiana Chavez and I am 34 years old. I have been a single mom since I was 20 to two amazing boys now aged 10 and 13. Mostly bartended and danced at clubs to support my family until I met my loving husband three years ago. Since then we welcome to our beautiful baby girl and I've been a stay at home mom ever since.

I've known Manuel Chavez his whole life. He is my little brother. Until now that I am at the risk of losing him, I haven't realized what a blessing he has been. We grew up with a mother who tried her best but was incredibly physically abusive. A "father " who was barely in our lives and damaged us emotionally. A alcoholic uncle who was supposed to take care of us but abused us as well. Looking back, my little brother and sister were all I had for support and the only people that made my childhood happy. Despite everyone failing him and leaving him no good example Manny grew up to be a compassionate, honest, reliable, trustworthy, supportive, hard-working, giving, protective, funny, and loving man who I am proud to call my brother. But he's more than that. Manny is an amazing uncle and father figure too. He moved in with me when I couldn't afford a babysitter so I can work. He is deeply involved in the lives of my sister's kids too. As Manny grew up he learned to forgive our family without an apology and is supportive son as well by helping with errands, home and car repair for our parents. He's a positive and dependable friend to everyone who knows him. And Kind to even strangers. I couldn't wish for a better brother.

So I was shocked and devastated to hear that Manny has been found guilty of participating in a telemarketing scheme. I understand the severity of the crime and would never condone those acts. This is out of character for my brother. I've NEVER seen him hurt anyone intentionally. He's become wiser and more aware of his actions since this happened and I believe with all my heart and how well I know my brother that NOTHING of the sort will ever happen again.

Your honor, I beg you please to consider leniency in sentencing my brother. He has dreams of marrying his sweet girlfriend Lisa, fatherhood, and homeownership. His dreams are my

dreams. I desperately want to see him finally succeed after everything he's been through. We are all truly suffering without him. Thank you for taking the time to read this.

Respectfully yours,

Tatiana Chavez

Dear Judge Cogburn,

My name is Taylor Neil. I am an Independent National Health Advisor whose is licensed in 32 states (DBA NDI), and the owner of Ptah Renovations LLC. I was also a 2nd class Petty officer in the U.S Nuclear Navy (ET2). I am writing you, your Honor, in regards to the sentencing of Manny Chavez who has been convicted of international telemarketing fraud.

I have known my dear friend Manny for roughly 12 years and consider him family. I understand that Manny has been found guilty of participating in an international telemarketing scheme, and I understand the seriousness of this matter, but I am humbly writing for a reduction in his sentencing.

Manny is a good guy. He has a kind heart, is self sacrificing, and loves his family and friends more than anything on this planet. He is the type of guy that would empty his own wallet to buy you groceries if he saw that you were in need. I love Manny like a brother. Since we were in our early 20's Manny and I have seen each other multiple times a week, building up a considerable level of friendship and trust. He has had a key to every home I've had for over a decade, he has taken care of my dogs, and treated my friends, family, and girlfriends with respect and kindness.

Manny has been a constant in my life, and losing him would be crushing. So I'm sincere in my hope that the court takes this letter into consideration when sentencing. Despite his crimes, I still believe Manny Chavez to be an honorable individual, a value to society, and a genuinely good human being deserving of a second chance.

Respectfully,

Taylor Z. Neil

11 | 19 | 22